UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| GLADYS N. DAILY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 08-35-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AMERICAN FOUNDERS BANK, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Gladys Daily was employed by American Founders Bank, Inc.(hereafter, "AFB" or the "Bank") as the Vice President and Branch Manager until she was terminated on October 4, 2007 – nearly two years after being hired. [See Complaint; Record No. 1]  Daily brings this action alleging age discrimination, sex discrimination, defamation, and intentional infliction of emotional distress.  AFB. has now moved the Court to enter summary judgment in its favor. AFB argues that Daily's statutory claims pre-empt her tort claims.  It further asserts that Daily failed to preserve a Title VII sex discrimination claim by making the required administrative filings before this lawsuit was filed and that she cannot establish a prima facie case of age[1] discrimination.  The Bank further contends that Daily cannot show that its legitimate reason for discharging her was pretextual. [Record No. 38]

---

[1]   American Founders asserts that Daily cannot establish a prima facie case of sex discrimination in the introduction of its brief, but fails to make an arguments supporting this assertion.

After reviewing the relevant authorities, the Court agrees that the statutory claims preempt the tort claims. As a result, Daily's defamation and emotional distress claims will be dismissed, with prejudice. However, Daily has met the administrative filing requirement for her sex discrimination claim. Further, she has established a prima facie case of age discrimination and has presented sufficient evidence to meet the burden of production that the bank's legitimate, non-discriminatory reason for termination could be found to amount to a pretext for termination. Accordingly, AFB's motion will be denied as to the sex and age discrimination claims.

**I.      Relevant Facts**

Frank Page, Market President for AFB's Shelbyville branch, recruited Daily shortly after she retired from a 30-year career in banking. She started working as Vice President and Loan Officer for the Bank on October 10, 2005, when she was age 61. Daily generated a substantial amount of business for AFB and never received a bad evaluation. However, AFB's handbook states:

> Any employee who is found to have falsified any document pertaining to their [sic] employment with the bank, customer information, or any document pertaining to the general business operations of the bank, will be subject to immediate dismissal.

[Record No. 38, p. 4] AFB's Code of Conduct required, among other things, that officers and employees "never permit their personal interests to conflict or appear to conflict with the interests of [AFB]" and "disclose unethical, dishonest, fraudulent and illegal behavior or the violation of [AFB] policies and procedures, directly to management or to the Audit Committee of the Boards." *Id.* The Code of Conduct further states that officers or employees cannot "conduct self-dealing or otherwise trade on their positions with [AFB]." *Id.*

In August, 2007, Daily was promoted to Vice President and Branch Manager. Shortly after Daily accepted the Branch Manager position, Vickie Wise, age 43, was interviewed by Frank Page and Mitch McClain, a Vice President and Loan Officer for AFB. [Record No. 50, p. 4] Daily contends that Wise was interviewed without her knowledge for a position as a loan officer and potential branch manager – a position equal or below that held by Daily. *Id.* Daily claims that interviewing someone who would be under the direction of a branch manager without notice or input from that manager is contrary to normal banking practice. *Id.* She further asserts that AFB was looking for an opportunity to terminate her so that it could hire Wise as Vice President and Branch Manager. *Id.*

During this same time frame, Daily's son and daughter-in-law were reorganizing their debts through a bankruptcy proceeding, but wanted to get a car loan.[2] On September 18, 2007, in order to determine if these relatives might qualify for a loan, Daily, with the help of a loan processor, obtained a credit report which reflected credit score sufficient to support the requested loan. Daily also attempted to order her son's tri-merge report. She claims that she was attempting to determine if her son was eligible to refinance his home loan, which would reduce his monthly mortgage and generate additional funds to be used for the automobile loan. *Id.* at 5. AFB claims that Daily was actually ordering the tri-merge report for her son's bankruptcy attorney. [Record No. 38, p. 6-7]

The Bank's underwriting department advised that a signed loan application was needed to obtain a tri-merge report. According to Daily, with her son and daughter-in-law's permission,

---

[2] Obtaining any additional loan indebtedness during a bankruptcy proceeding requires the approval of the trustee.

she signed their names to a loan application and submitted it in support of the request for the a tri-merge report. [Record No. 50, p. 6] The underwriting department had concerns regarding the legitimacy of this request and notified Frank Page. Page then questioned Daily about her actions and issued a verbal reprimand directing that she not obtain her son's tri-merge report. AFB claims that, after talking to Page, Daily filled-out and submitted a real estate loan application to obtain a tri-merge report. [Report No. 38, p. 7] And while Daily admits that she filled-out the real estate loan application *before* her conversation with Page, she denies attempting to obtain the tri-merge report *after* her conversation with him. [Record No. 38, Exhibit 1, p. 53][3]

On September 25, 2007, Daily's lending authority was suspending pending an investigation by human resources. While the investigation was pending, Daily copied bank documents for herself, including documents showing that Frank Page and Mitch McClain had initiated loans to family members. [Record No. 38, p. 7] Daily was terminated at the conclusion of the investigation on October 4, 2007. Daily asserts that she was terminated six days prior to certain retirement benefits vesting, and before she became eligible to receive bonus pay, accumulative sick leave, vacation time, and annual meritorious increases. [Record No. 50, p. 7] AFB's Employee Termination Notice identified the reason for Daily's termination as "[f]orged signature on loan application to a family member. Improper policy and procedure violation." [Record No. 50, Exhibit A]. Further, AFB stated on a form provided by the Office of Employment and Training Division of Unemployment Insurance that "Mrs. Daily stated that she

---

[3]   A real estate loan application has not been produced by either party. [Record No. 38, p. 7]

signed her son's name to a loan application; loan officers are not permitted to process their relatives loans." [Record No. 50, Exhibit C2][4]

In filing-out her charge of discrimination form with the EEOC, Daily checked the box indicating "race," but not "sex," as the motivation for discrimination against her. [Record No. 51, Exhibit 1] She further indicated that:

> I was hired by American Founders Bank as Vice President/Loan Officer on October 10, 2005. I was discharged on October 4, 2007. I was informed that I was terminated for forgery. I believe that I was terminated because of my age, 62, in violation of the Age Discrimination in Employment Act (ADEA).

*Id.* During a subsequent interview, Daily allegedly told the EEOC that Page (male) processed a loan application for his mother-in-law to lend to the bank's president's ex-wife to pay back child support; and McClain (male) processed a loan application, obtained credit reports, signed loan applications, and obtained funds for his daughter's home equity loan. [Record No. 50, p. 8] However, there is no indication that the EEOC investigated a sex discrimination charge.

Daily was initially denied unemployment benefits. After an appeal and hearing, the Kentucky Unemployment Insurance Commission found Daily was not discharged for misconduct and awarded her benefits. The Commission's findings mentioned that Page and McClain had each processed loans for family members.

## II.  Legal Analysis

### A.  The Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4]  Following Daily's termination, Vickie Wise was hired as Vice President and Branch Manager.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those materials in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

In reviewing a party's motion for summary judgment, a court's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Barr*, 538 F.3d at 561 (*quoting Anderson*, 477 U.S. at 249). In doing so, all

evidence must be viewed in the light most favorable to the nonmoving party. *Id*. However, a mere scintilla of evidence is insufficient defeat a motion for summary judgment. *In re Petty*, 538 F.3d 431, 439 (6th Cir. 2008). Rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Id*. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

### B. Defamation and Emotional Distress Claims

Daily concedes that the claims of defamation and intentional infliction of emotional distress are circumvented by the statutory claims of age and sex discrimination. [Record No. 50, p. 1]; *see Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985) (Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute). Thus, AFB's motion will be granted as to Counts Three and Four.

### C. Sex Discrimination Claim

AFB contends that Daily failed to preserve a Title VII sex discrimination claim because she did not make the required administrative filings before this lawsuit. Both parties agree that, to file claims in federal court, a charge of discrimination must be filed with the EEOC and claims are limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citing *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir.1980)). It is undisputed that Daily did not mention sex discrimination on her charge filed with the EEOC;

however, she did provide information regarding sex discrimination during her EEOC interview. After reviewing all relevant authorities and the material filed in support of this motion, Daily may proceed with her sex discrimination claim.

The policy or purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Scott v. Eastman Chemical Co.*, 275 F. App'x 466 (6th Cir. 2008) (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)). A party's discrimination claim in the District Court may only include claims "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Davis*, 157 F.3d at 463 (citing *McCall Printing*, 633 F.2d at 1235).

Charges of discrimination are frequently filed by lay people, and courts recognize that subsequent actions should not be restricted by the failure of non-lawyers to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include "the exact wording which might be required in a judicial pleading." *Davis*, 157 F.3d at 463 (citing *EEOC v. The Bailey Co., Inc.*, 563 F.2d 439, 447 (6th Cir.1977)). For example, in *Scott*, the plaintiff was not barred from filing a failure to promote claim when the EEOC charge specifically stated she was denied a certain position but failed to state she was making a failure to promote charge. *Scott*, 275 F. App'x 466.

When an EEOC investigation of a charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred. *Davis*, 157 F.3d at 463. In *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.

1970), cited with approval in *Bailey*, *supra*, the court allowed the plaintiff to proceed with charges of discrimination on the basis of national origin when the charge had only alleged sex discrimination. This was because the EEOC investigation *in fact* revealed the true basis of discrimination. *Sanchez*, 431 F.2d at 466. Daily contends that the "understanding that the Louisville office of the EEOC also investigated claims of sex discrimination arising out of the interviews with Gladys Daily must leave this court to the conclusion that her claims for Title VII relief should be allowed to move forward." [Record No. 50, p. 10] Her reliance on this case is misplaced, because no evidence has been provided to show that the EEOC investigated the sex discrimination claim or revealed any evidence relating to it.

Where facts related to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim. *Davis*, 157 F.3d at 463. Plaintiffs are not to be penalized if the EEOC did not actually investigate the charge or the investigation should have been larger in scope. *Scott*, 275 F. App'x at 471 (citing *Dixon*, 392 F.3d at 219).

In *Farmer*, several female plaintiffs who worked as "attendants" filed charges with the EEOC alleging denial of fair representation by their union in attempting to secure jobs as "servicemen," which were preferable in terms of both hourly wage and length of work day. *Farmer v. ARA Services Inc.*, 660 F.2d 1096, 1101 (6th Cir. 1981). Although the charges to the EEOC did not specifically allege that the wage scales in the collective bargaining agreement were discriminatory, the subsequent federal court complaint pled equal pay claims against the union. The Sixth Circuit held that "an investigation of the attendant classification and its

responsibilities in comparison with that of the serviceman classification would have led to the equal pay claims which the plaintiffs pled more explicitly in their federal court complaint," and that the plaintiffs' Title VII claims before the District Court did not exceed the scope of their administrative charge. *Id.* at 1105.

Likewise, in *McCall Printing*, the plaintiffs were not barred from filing separate and distinct claims of discrimination against the 1972 agreement when the EEOC charge only mentioned denial of back seniority benefits. *McCall Printing*, 633 F.2d at 1235. Since the denial of back seniority benefits was a result of the 1972 agreement, the charges should have prompted the EEOC to investigate and a reasonable investigation would have led to the discrimination claim. *Id.*

Membership alone in two protected classes is not enough to prompt the EEOC to investigate a different, uncharged claim. *See Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1985) (plaintiff barred from filing sex discrimination claim when specifically stated on EEOC charge that she was denied job based 'solely' on her race, only evidence of gender was her name); *see also Ang v. Proctor & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991) (not clearly erroneous for District Court to bar race discrimination claim when EEOC charge specifically stated 'I was terminated from my position...due to my national origin...' and never alleged any facts regarding race). In *Davis*, the plaintiff filed an EEOC charge for race discrimination but was barred from filing an age discrimination claim in District Court because the only support on the EEOC charge relating to an age discrimination claim was her birth date and length of employment. *Davis*, 157 F.3d 460. Davis provided no other facts to the EEOC relating to age

discrimination. *Id.* The Bank's comparison of the case at hand to *Davis* is inaccurate because Daily did provide information relating to sex discrimination to the EEOC during an interview.

Here, Daily contends that, during her EEOC interview, she discussed two similarly-situated male employees who were not terminated for participating in the same type of activity that allegedly formed the basis for her discharge. The rule in this circuit is that the complaint and the judicial proceedings are limited not to the words of the EEOC charge but to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Farmer*, 660 F.2d at 1105 (citing *McCall Printing*, 633 F.2d 1232). Nevertheless, the purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Scott*, 275 F. App'x 466 (citing *Dixon*, 392 F.3d at 217. In the present case, Daily verbally related facts that should have prompted the EEOC to investigate a claim of sex discrimination. Since the allegations were not made in writing and because the EEOC never investigated the allegations, AFB was not placed on notice of its potential liability. Notwithstanding this fact, plaintiffs are not to be penalized if the EEOC did not actually investigate the charge or if the investigation should have been larger in scope. *Scott*, 275 F. App'x at 471 (citing *Dixon*, 392 F.3d at 219).

Because the Court must view the facts in the light most favorable to the nonmoving party in evaluating a motion for summary judgment, Daily's allegation that she told the EEOC about similarly-situated male employees who were not terminated for participating in similar activity must be taken as true. *See Matsushita*, 475 U.S. at 587. Months before her EEOC interview,

Daily provided the Commission with this same information and it was later included it in its findings. [Record No. 50, Exhibit D] While the Commission's findings are not binding on this Court[5], this finding further supports the assertion that Daily did relay this information to the EEOC during her interview. The EEOC was prompted to investigate a sex discrimination claim, but there is no evidence in the record showing the EEOC actually conducted such an investigation. Further, Daily's sex discrimination claim falls within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. Therefore, the Plaintiff's sex discrimination claim is not barred by the exhaustion doctrine and may proceed.

D.   Age Discrimination Claim

AFB also argues that Daily's age discrimination claim fails: (1) based on the "same actor inference;" (2) based on the business judgment rule; (3) because a person outside the protected class did not replace her; (4) because Frank Page and Mitch McClain did not commit the same infraction and are not "similarly situated" to Daily; and (5) because Daily cannot show Defendant's legitimate reason for terminating her is pretextual. [Record No. 38, p. 9-16] However, after reviewing the relevant materials and authorities, the Court concludes that summary judgment regarding Daily's age discrimination claim should be denied.

1.   Same Actor Inference

The "same actor inference" supports a conclusion that a person who hired an age-protected employee, but who later discharges that same employee, probably was not motivated by age bias. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 590 (6th Cir.

---

[2]   *See Hicks v. Floyd County Bd. of Educ.*, 99 F. App'x 603 (6th Cir. 2004).

2003). In *Wexler*, the Sixth Circuit thoroughly analyzed, but rejected, the proposition that a mandatory inference must be applied in the summary judgment context whenever the claimant has been hired and fired by the same individual. *Id.* at 573. If an employee has raised a genuine issue of material fact, the same actor inference is insufficient to warrant summary judgment for the employer. *Id.* at 573-74. However, the "same actor inference" viewed with the entire record can support a motion for summary judgment. *Id.* at 591. Therefore, Daily's age discrimination claim does not fail based on the same actor inference, but it will be considered with the entire record.

2. Business Judgment Rule

AFB also points to the business judgment rule in support of its argument that Daily's age discrimination claim should fail. The "business judgment rule" is invoked by courts to avoid the difficult task of reviewing business decisions, and to avoid substituting the court's uninformed opinion for that of experienced management. *Brown v. Ferro Corp.,* 763 F.2d 798, FN2 (6th Cir. 1985). Courts should be extremely reluctant to condemn a business practice simply because they do not perceive a good rationale to support it. *Campbell v. Potash Corp. of Saskatchewan, Inc.*, 238 F.3d 792, 800 (6th Cir. 2001). However, the business judgment rule cannot be used to shield employers from claims of discrimination and cannot be used to exclude consideration of evidence relevant to the question of pretext. *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (citing *Wexler*, 317 F.3d at 577).

One way to demonstrate pretext is to show that the employer's asserted business judgment was so infected with error that defendant could not have honestly relied upon it.

*Bender*, 455 F.3d at 627 (citing *In re Lewis*, 845 F.2d 624, 633 (6th Cir.1988)). The Court's role is merely to assess whether a plaintiff has presented enough evidence for a reasonable jury to accept the claim that the employer made an unlawful business decision. *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). While the Court will not substitute its judgment to determine whether AFB made a good business decision, the business judgment rule does not apply in determining whether summary judgment is appropriate. *See id.*

### 3. Person Outside Protected Class not Replace Daily

AFB argues that, for Daily to establish a prima facie case of age discrimination, she must show that she was replaced by someone outside the protected class. [Record No. 38, p. 11] Defendant points out that in order to establish a prima facie case, the Daily must show that she was: (1) a member of a protected class; (2) discharged; (3) qualified for the position held; and 4) replaced by someone outside of the protected class. *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009). However, the Supreme Court has modified the fourth element to encompass a replacement worker who was also a member the protected group, yet significantly younger than the plaintiff. *Wexler*, 317 F.3d at 591 (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996)). "Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008) (*quoting Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir.2003)).

Here, it is undisputed that Vickie Wise, Daily's replacement, was 20 years younger than Daily. Therefore, summary judgment is not appropriate based on this ground.

### 4. No Similarly Situated Person

Next, AFB argues that Daily cannot establish a prima facie case of age discrimination by showing that she was treated less favorably than a similarly situated person who committed the same infraction because Frank Page and Mitch McClain did not commit the same infraction and are not "similarly situated." [Record No. 38, p. 12-13] AFB further asserts that, "[b]ecause Daily has come forward with no valid comparators, she has no prima facie case of age discrimination." [Record No. 51, p. 6] According to the Complaint, Daily is not alleging that she was treated less favorably than similarly situated persons who committed the same infraction in the context of her age discrimination claim. Instead, she is alleging less favorable treatment in the context of her sex discrimination claim. [Record 1] Daily does not even mention the age of Frank Page or Mitch McClain. She is only relying upon the fact that Frank Page and Mitch McClain processed loans for family members as evidence that AFB's reasons for terminating her were a pretext.

### 5. Pretext

AFB also contends that summary judgment is appropriate with respect to Daily's age discrimination claim because she cannot demonstrate that the stated and legitimate reason for terminating her was pretextual. A plaintiff can establish pretext by demonstrating that the defendant's articulated legitimate, nondiscriminatory reason either: (1) lacks a basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge. *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 319 (6th Cir. 2007). A plaintiff may

also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. *Wexler*, 317 F.3d at 578 (6th Cir. 2003).

According to the AFB's Employee Termination Notice, the legitimate, non-discriminatory reason for terminating Daily was because she "[f]orged signature on loan application to a family member. Improper policy and procedure violation." [Record No. 50, Exhibit A]. AFB further states in a form provided to the Commission that "Mrs. Daily stated that she signed her son's name to a loan application; loan officers are not permitted to process their relatives loans." [Record No. 50, Exhibit C2]

Daily asserts numerous facts in support her argument that Defendant's legitimate reason for terminating her is pretextual. For example, she claims that she had a 30 year career in banking with a model and outstanding record, and that a person who was 20 years younger was interviewed secretly and contrary to normal bank policy before any allegation of wrongdoing had been made. Further, two co-workers processed loans for family members and were not disciplined, and it was regular practice of loan originators to make identical requests for tri-merge reports with or without signatures for identical reasons. According to the Affidavit of Leanne Taylor, it was the custom at AFB to take loan applications over the phone and sign the application with the customer's permission. [Record No. 50, Exhibit 2, ¶ 10][6]

---

[6] Daily also attempts to use the findings of the Commission as evidence that her termination was pretextual. However, this Court is not bound by the Commission's findings. *Hicks v. Floyd County Bd. of Educ.*, 99 F. App'x 603 (6th Cir. 2004).

Daily also alleges that she did not violate any rule or law. [Record No. 50, p. 15] However, she admits that she signed her son and daughter-in-law's name to a loan application with their permission, and such action could certainly be viewed as falsifying a document. However, Daily's contention that it was customary at AFB to sign loan applications with a customer's permission supports her argument that her termination was pretextual. Both arguments should be weighed accordingly.

AFB maintains that Daily cannot provide enough evidence to show her termination was pretextual and that the "same actor inference" supports its position. Daily was hired and terminated by Frank Page within two years so there is an inference that he was not motivated by age bias. AFB further contends that Daily knew she was violating bank policy by trying to obtain a tri-merge report for personal use. However, Daily denies her actions were in violation of bank policy and claims she was not ordering this credit report for personal use.

It bears repeating that, in this summary judgment motion, the facts must be viewed in the light most favorable to the plaintiff. *See Matsushita*, 475 U.S. at 587. Therefore, Defendant's reliance on *Allen* is misplaced. *Allen v. Highland Heights Hospital Corp.*, 545 F.3d 387 (6th Cir. 2008) (employee's knowledge that her actions were not in conformity with employer policy belied her claim of pretext). After reviewing the relevant authorities and weighing all the facts of this case, the Court believes that Plaintiff has presented sufficient evidence to meet the burden of production that AFB's legitimate, non-discriminatory reason for termination could be found to be pretextual. As a result, Daily has presented a genuine issue of material fact precluding summary judgment.

### III.     Conclusion

Daily's defamation and intentional infliction of emotional distress claims are pre-empted by her statutory claims. Additionally, Daily has met the administrative filing requirement for her sex discrimination claim. She has also established a prima facie case of age discrimination and has presented enough evidence to meet the burden of production that AFB's legitimate, non-discriminatory reason for termination could be found to be pretextual. Accordingly, it is hereby

**ORDERED** as follows:

1. The Defendant's motion for summary judgment [Record No. 38] is **GRANTED** in part, and **DENIED**, in part.

2. Count Three and Count Four asserted by Plaintiff Gladys Daily against Defendant American Founders Bank, Inc. are **DISMISSED**, with prejudice.

This 16th day of October 2009.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge